IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HENRY JAMES,

    Plaintiff,

v.                                           Civil Action No. **3:15CV519**

**M. BAILEY, *et al.*,**

    Defendants.

## MEMORANDUM OPINION

Henry James, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  The matter is before the Court on the Motion to Dismiss filed by Defendants M. Bailey, S. Cain, J. Lewis, and Harold Clarke.[2]  (ECF No. 12.)  James has submitted a Memorandum in Support of Plaintiff's Opposition Reply to Defendants' Motion to Dismiss ("Response," ECF No. 19).  For the reasons stated below, the Court will GRANT the Motion to Dismiss.

## I.    STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] M. Bailey is the Assistant Warden at Sussex II State Prison ("SIISP").  S. Cain is a Lieutenant at SIISP.  J. Lewis is a Correctional Officer at SIISP.  Harold Clarke is the Director of the Virginia Department of Corrections ("VDOC").

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft*

*Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

In his Complaint, James raises claims concerning his placement in ambulatory restraints and the decision to replace his meals with diet loaf for a seven-day period. James alleges that on October 15, 2014, at approximately 12:27 p.m., "an alleged incident occurred . . . wherein Plaintiff was accused of dousing a security staff with liquid substances." (Compl. ¶ 2, ECF No. 1.)[3] Afterwards, "[e]ven though Plaintiff was secured in his cell posing no form of threat to himself, security staff or others . . ., Defendant Cain cont[]acted Defendant Bailey and obtained his authorization to place Plaintiff in bodily/ambulatory restraints." (*Id.*)

At 3:35 p.m., Defendant Lewis entered James's cell and placed James in the ambulatory restraints "as Defendant Cain, Lieutenant Walker and Sergeant Carver stood by watching." (*Id.* ¶ 3.) Defendant Lewis "secured Plaintiff's wrists in handcuffs and a lock box then placed shackles on his ankles." (*Id.*) Defendant Lewis then connected the shackles to the lock box with a chain and lock. (*Id.*) James's property was removed from his cell, and he "was stripped of his uniform/jumpsuit." (*Id.* ¶ 4.) James remained in the ambulatory restraints for ten hours and 45 minutes. (*Id.*)

---

[3] The Court corrects the capitalization in quotations from James's submissions.

The next day, October 16, 2014, Defendant Bailey ordered that James be "placed on a loaf diet consisting of vegetables and beans baked into a dough." (*Id.* ¶ 5.) James received the diet loaf "twice a day for the 7 days following his release from bodily restraints." (*Id.* ¶ 6.)

The Court construes James's Complaint to raise the following claims for relief:

Claim One:    Defendants Bailey, Cain, and Lewis violated James's (a) rights under the Eighth Amendment[4] and (b) due process rights under the Fourteenth Amendment[5] by placing him in ambulatory restraints for ten hours and 45 minutes. (*Id.* ¶¶ 1–4.)

Claim Two:    Defendant Bailey violated James's (a) rights under the Eighth Amendment and (b) due process rights under the Fourteenth Amendment by ordering that James receive diet loaf for his meals for seven days following James's removal from the ambulatory restraints. (*Id.* ¶¶ 5–6.)

Claim Three:  Defendant Clarke violated James's rights because "subordinate staff to Defendant Clarke" unconstitutionally placed James in ambulatory restraints for ten hours and 45 minutes and restricted him to "diet loaf" for seven days. (*Id.* ¶ 7.)

## III.   EIGHTH AMENDMENT

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). "What must be [alleged] with

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

regard to each component 'varies according to the nature of the alleged constitutional violation.'"

*Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must allege "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Deliberate indifference requires the plaintiff to allege facts suggesting that a particular defendant actually knew of and disregarded a substantial risk of serious harm to the plaintiff's person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized

that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding and the subjective component is more demanding. *See Williams*, 77 F.3d at 761. With respect to the objective component, the inmate must allege facts suggesting that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010); *see id.* at 38 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (quoting *Hudson*, 503 U.S. at 9)). Nevertheless, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.*

With respect to the subjective component, the inmate must allege "'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Specifically, "the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 (internal citation omitted).

## A.    Ambulatory Restraints

In Claim One (a), James alleges that Defendants Bailey, Cain, and Lewis violated James's rights under the Eighth Amendment by placing him in ambulatory restraints for ten hours and 45 minutes. (Compl. ¶¶ 1–4.) It is not entirely clear whether the alleged use of

ambulatory restraints should be evaluated as a claim for excessive force or as a challenge to James's conditions of confinement. *See Majette v. Geo Group, Inc.*, 3:07CV591, 2010 WL 3743364, at \*5 (E.D. Va. Sept. 22, 2010) (citations omitted). It is unnecessary, however, to decide that issue here, because James has failed to sufficiently allege an Eighth Amendment claim under either standard. *See Holley v. Johnson*, No. 7:08CV00629, 2010 WL 2640328, at \*12–15 (W.D. Va. June 30, 2010) (evaluating inmate's claim regarding the use of restraints under both the excessive force and conditions of confinement standards). Specifically, evaluated as a claim of excessive force, James fails to allege facts that sufficiently suggest that the amount of force employed was nontrivial and that Defendants Bailey, Cain, and Lewis acted maliciously to cause harm. Evaluated as a conditions of confinement claim, James fails to allege sufficient facts to satisfy the objective component.

### 1.    Excessive Force

There exists "ample authority . . . holding that the use of ambulatory restraints for extended periods of time does not generally constitute an Eighth Amendment violation because such use does not satisfy the objective component of the excessive force inquiry." *Goodman v. McCoy*, No. 7:12CV00186, 2013 WL 693103, at \*8 (W.D. Va. Feb. 26, 2013) (citation omitted); *see Holley*, 2010 WL 2640328, at \*14 n.22 (citations omitted) (noting that the court "has repeatedly held that the extended use of ambulatory restraints which does not result in significant physical injury is a *de minimus* use of force that does not satisfy the objective component of an Eighth Amendment excessive force claim"); *Madison v. Kilbourne*, No. CIVA 7:04CV000639, 2006 WL 2037572 (W.D. Va. July 18, 2006) (concluding that being held in ambulatory restraints for fourteen hours did not violate the Eighth Amendment), *aff'd in relevant part by* 228 F. App'x 293 (4th Cir. Mar. 27, 2007). "[A]mbulatory restraints, as a control mechanism, properly applied

and maintained even for a lengthy period, are 'not a use of force that offends contemporary standards of decency so as to satisfy the objective component of an excessive force claim.'" *Goodman*, 2013 WL 693103, at *8 (quoting *Holley*, 2010 WL 2640328, at *14).

Here, James suggests that the use of ambulatory restraints for ten hours and 45 minutes constituted excessive force because he "was secured in his cell posing no form of threat to himself, security staff or others." (Compl. ¶ 2.) James admits that Defendants Bailey, Cain, and Lewis decided to use the ambulatory restraints after an incident where "Plaintiff was accused of dousing a security staff with liquid substances." (*Id.*) In his Response, James indicates that while in the ambulatory restraints, he "experienced physical discomfort, exacerbated pain, muscle spasms, anguish, humiliation, resulting soreness and depression." (Resp. 3, ECF No. 19.) He also notes that he "had to remain in an awkward position for the prolonged period." (*Id.* at 4.) James, however, fails to allege that the ambulatory restraints caused him any "physical injury other than temporary discomfort and embarrassment." *Holley*, 2010 WL 26400328, at *14.

James also fails to allege sufficient facts to satisfy the subjective component of an excessive force claim. In determining whether the measure used by prison officials against an inmate was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," *Hudson*, 503 U.S. at 7, the Supreme Court has directed courts to consider the following factors: (1) the necessity for the application of force; (2) the relationship between the need for force and the level of force applied; (3) the threat "reasonably perceived by the responsible officials;" (4) "any efforts made to temper the severity of a forceful response;" and, (5) the extent of the injury. *Williams*, 77 F.3d at 762 (quoting *Hudson*, 503 U.S. at 7 (citations omitted)). As noted above, James admits that Defendants Bailey, Cain, and Lewis decided to use the ambulatory restraints after an incident where "Plaintiff was accused of

dousing a security staff with liquid substances." (Compl. ¶ 2.) Moreover, James fails to allege that the use of the ambulatory restraints caused physical injury. Nothing in James's Complaint or Response suggests that Defendants Bailey, Cain, and Lewis used the ambulatory restraints on James "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Accordingly, to the extent that Claim One (a) should be evaluated as a claim of excessive force, James fails to allege sufficient facts to suggest that the amount of force employed was nontrivial and that Defendants Bailey, Cain, and Lewis acted with a sufficiently culpable state of mind. *See Wilkins*, 559 U.S. at 39; *Iko*, 535 F.3d at 239 (citation omitted).

### 2. Conditions of Confinement

Under the objective prong for an Eighth Amendment claim challenging conditions of confinement, the inmate must allege that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is " part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson*, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether the inmate has alleged whether a condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.* at 1381.

Here, James has alleged that he was left in the ambulatory restraints for ten hours and 45 minutes. (Compl. ¶ 4.) All of his personal property was removed from his cell, and he "was stripped of his uniform/jumpsuit." (*Id.*) In his Response, James indicates that while in the ambulatory restraints, he "experienced physical discomfort, exacerbated pain, muscle spasms,

anguish, humiliation, resulting soreness and depression." (Resp. 3, ECF No. 19.) He also notes that he "was not allowed temporary release from the restraints to defecate and had to remain in an awkward position for the prolonged period." (*Id.* at 4.)[6] Although James characterizes his pain as "exacerbated," he has failed to allege facts that indicate that his pain, soreness, and discomfort was sufficiently serious to support the objective component of an Eighth Amendment claim. *See Holley*, 2010 WL 2640328, at *13 (concluding that sore muscles from use of restraints was not objectively a sufficiently serious injury). Because James has failed to sufficiently allege an Eighth Amendment claim with respect to the use of ambulatory restraints, Claim One (a) will be DISMISSED.

### B.  Diet Loaf

In Claim Two (a), James alleges that Defendant Bailey violated his Eighth Amendment rights by restricting him to receiving diet loaf for his meals during the seven-day period following James's removal from the ambulatory restraints. (Compl. ¶¶ 5–6.)

"The Eighth Amendment requires that inmates be provided 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (alteration in original) (some internal quotation marks omitted) (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)); *see also Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (citations omitted) (explaining that Eighth Amendment requires nutritionally adequate food); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted)

---

[6] The Court notes that in *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court concluded that an inmate's allegations of being handcuffed to a hitching post for seven hours with limited access to bathroom facilities satisfied both the objective and subjective components of an Eighth Amendment conditions of confinement claim. *Id.* at 737–38. Here, however, James has failed to allege facts from which the Court could conclude that James "had no independent access to a toilet" and therefore could not relieve himself in such. *Holley*, 2010 WL 2640328, at *13.

(concluding that "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing").

Contrary to James's belief, "[b]eing fed the VDOC's Diet Loaf is not cruel and unusual punishment." *Douglas v. Johnson*, No. 7:11–CV–00468, 2013 WL 1123849, at *6 (W.D. Va. Mar. 18, 2013) (citing *Johnson v. Shear*, No. 7:10–CV–00381, 2011 WL 3880949, at *6 (W.D. Va. Sept. 1, 2011)); *see LeMaire*, 12 F.3d at 1455–56 (concluding that use of a Nutraloaf diet for seven days did not violate inmate's Eighth Amendment rights). Moreover, James has failed to allege facts that the diet loaf was insufficient to meet his basic nutritional needs. While the diet loaf "may not have been to [James's] liking, . . . [James] has not [alleged any facts] which suggest[] that because [he was restricted to diet loaf for seven days] he has sustained a serious or significant injury . . . ." *Baker v. Mullins*, No. Civ.A. 7:05CV00466, 2005 WL 2076522, at *5 (W.D. Va. Aug. 25, 2005). James also fails to allege facts suggesting that Defendant Bailey knew of and disregarded any excessive risk to James's health from receiving the diet loaf. *Farmer*, 511 U.S. at 837. Because James fails to adequately allege an Eighth Amendment claim with respect to the diet loaf, Claim Two (a) will be DISMISSED.

## IV. FOURTEENTH AMENDMENT

In Claim One (b), James contends that Defendants Bailey, Cain, and Lewis violated his right to due process under the Fourteenth Amendment by placing James in ambulatory restraints for ten hours and 45 minutes without the benefit of a hearing. (Compl. ¶¶ 1–4.) In Claim Two (b), James alleges that Defendant Bailey violated his right to due process under the Fourteenth Amendment by ordering that James receive "diet loaf" for his meals for seven days following James's removal from the ambulatory restraints. (*Id.* ¶¶ 5–6.)

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005).

A.  **The Constitution Fails to Confer a Liberty Interest in Avoiding Ambulatory Restraints and Diet Loaf**

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in avoiding either ambulatory restraints or diet loaf.

B.  **Analysis of State-Created Liberty Interests**

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citations omitted). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff

must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

### 1.    Ambulatory Restraints

Here, James's Complaint fails to allege facts indicating that the conditions he endured while in ambulatory restraints were significantly harsher than those he enjoyed at other times. While James alleges that he was kept in the ambulatory restraints for a lengthy period of time, he admits that Defendants Bailey, Cain, and Lewis decided to use the restraints after James had thrown a liquid substance onto an officer. Moreover, James fails to allege any facts suggesting that he was unable to partake in ordinary activities, such as sitting, eating, and using the toilet, while in ambulatory restraints. *See Holley v. Johnson*, No. 7:08CV00629, 2010 WL 2640328, at *16 (W.D. Va. June 30, 2010) (concluding that "the additional, temporary restriction of ambulatory restraints, which cause no physical injury and allow extensive freedom of movement, is [not] so atypical as to 'impose a significant hardship in relation to the ordinary incidents of life'" (quoting *Beverati*, 120 F.3d at 504)); *Moore v. Miller*, No. 7:08CV00614, 2009 WL 113258, at *3 (W.D. Va. Jan. 15, 2009) (concluding that "application of ambulatory restraints did not trigger any federal due process right to a pre-restraint hearing"), *aff'd by* 349 F. App'x 815 (4th Cir. 2009); *Madison v. Kilbourne*, No. CIVA 7:04CV00639, 2006 WL 2037572, at *7 (W.D. Va. July 18, 2006) (concluding that inmate did not have protected liberty interest in avoiding ambulatory restraints), *aff'd in relevant part by* 228 App'x 293 (4th Cir. 2007). Because James has failed to allege facts that suggest he enjoyed a protected liberty interest in avoiding the use of ambulatory restraints, Claim One (b) will be DISMISSED.

## 2.    Diet Loaf

Likewise, James's Complaint fails to allege facts indicating that the conditions he endured during the seven-day period when he received diet loaf for his meals were significantly harsher than those he enjoyed at other times. "Prison is hardly known for its fine dining; in such a setting [the Court] cannot say that a temporary diet of a meatloaf-like substance is an atypical and significant hardship in relation to the ordinary incidents of prison life." *Gates v. Huibregtse*, 69 F. App'x 326, 328 (7th Cir. 2003) (citations omitted) (internal quotation marks omitted); *see Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002) (concluding that "being fed food loaf does not implicate a due process liberty interest"); *Tyler v. Lassiter*, No. 5:13–CT–3139–FL, 2016 WL 866325, at *6 (E.D.N.C. Mar. 3, 2016); *Blount v. Johnson*, No. Civ.A. 7:05CV00556, 2006 WL 335606, at *3 (W.D. Va. Feb. 14, 2006). Because James has failed to allege facts that suggest he enjoyed a protected liberty interest in avoiding being restricted to diet loaf for seven days, Claim Two (b) will be DISMISSED.[7]

## V.    NO PERSONAL INVOLVEMENT BY DEFENDANT CLARKE

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). Furthermore, "[b]ecause vicarious liability is

---

[7] In his Response, James asserts, for the first time, a claim that he has a protected liberty interest in the diet he receives because, as a follower of Judaism, he receives the Common Fare diet to satisfy his kosher dietary needs. (Resp. 6, ECF No. 19.) James suggests that diet loaf is not kosher-approved and that his inability to receive the Common Fare diet for seven days violated his right to free exercise of religion under the First Amendment. (*Id.* at 6–7.) "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). "[O]therwise . . . a party could unilaterally amend a complaint at will . . . even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citation omitted). Therefore, the Court will not consider James's new claims in this action.

inapplicable to . . . § 1983 suits, a plaintiff must [allege] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions).  Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted *personally* in the deprivation of the plaintiff[']s rights." *Vinnedge*, 550 F.2d at 928.

In Claim Three, James alleges that Defendant Clarke violated his rights because his "subordinate staff" unconstitutionally placed James in ambulatory restraints for ten hours and 45 minutes and restricted him to "diet loaf" for seven days.  (Compl. ¶ 7.)  James, however, fails to allege any facts suggesting that Defendant Clarke had any direct involvement or personal responsibility in the alleged deprivation of his constitutional rights.  Instead, James seeks to hold Defendant Clarke responsible under a theory of *respondeat superior*, which fails to provide a basis for relief under § 1983.  *See Vinnedge*, 550 F.2d at 928.  Accordingly, Claim Three will be DISMISSED.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 12) is GRANTED. James's claims and the action will be DISMISSED for failure to state a claim.  The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Order will accompany this Memorandum Opinion.

Date: 1/17/17
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge